Good morning. Good morning, Your Honors. May it please the Court. Please, could you move the microphone closer to yourself? Yeah, we need you to speak in both because we live stream and it makes it easier for us to hear. Is this better? No. No. Closer. You probably need to talk louder, too. Okay. Is this better? Talk, project. Sure, sure. Okay. May it please the Court, my name is Lisa Zepeda with a law from Teller Smith. We represent the Appellant Nutrition Distribution, LLC. I would like to reserve two minutes for rebuttal questions today. There are primarily three points I want to emphasize. First, the primary jurisdiction doctrine does not apply here. The primary jurisdiction doctrine is a very limited exception to the general principle that a court is obligated to hear and decide cases within its jurisdiction. The doctrine should only be invoked in a very limited set of circumstances. None of which exist here. The issue of whether defendants are falsely advertising products containing ostrin is not an issue of first impression and not a particularly complicated issue that is committed to the FDA. Instead, plaintiffs' claims rest on a determination of whether defendants' advertisements are likely to deceive a reasonable consumer. This is not an area requiring the FDA's expertise, as courts are experienced and qualified in determining whether conduct is misleading. For example, defendants claim that their ostrin products have immense potential for muscle building for bodybuilders and athletes. The FDA's expertise is not required to determine whether it is misleading to specifically market products to competitive athletes while neglecting to mention that these same products have been banned by the World Anti-Doping Agency and the U.S. Anti-Doping Agency.    defendants' advertisements are likely to deceive a reasonable consumer. Kennedy. Can I ask you a preliminary question? Yes. Is the order dismissing the complaint final and appealable, or was this a dismissal without prejudice? It was a dismissal without prejudice. Without prejudice? With prejudice. Why do you say it's a dismissal with prejudice? Does the order so state? Well, Rule 41 would so state. Would it not, counsel? Sorry? Wouldn't Rule 41, where you don't indicate whether it's with or without, that it's presumed to be with prejudice? I believe that's the case. This was granted without the motion to dismiss was granted without leap to amend. Counsel, that's what's called a lifeline. Yes. All right. Thank you. Okay. Now, I have a, counsel, I have a question. Which complaint is before this court? As I read the record, the court denied on February 5th your proposed order to extend the time to file a first amended complaint. But then on February 12th, you filed a first amended complaint. And on February 26th, Iron Mag filed a motion to dismiss the first amended complaint. How did the first amended complaint get filed if the order permitting it never was entered? The first amended, well, the first amended complaint is operative complaint here. Well, but if the motion to file a first amended complaint was denied, how was it that you could file it on February 12th, regardless of the fact that the order to permit the filing was denied? Or did I miss some order in the? I do not know the answer to that question. Thank you. Sorry. Okay. So the complaint alleges Iron Mag's products are misbranded and unlawfully marketed as dietary supplements, and that the products are prescription drugs or new drugs under the FDCA. Aren't these issues within the FDA's regulatory authority and expertise? And if not, why not? Well, our claims do not rely on those specific allegations. And in the briefing we had. Well, but those are your allegations in the complaint, right? They are in the complaint, yes. But your claims don't, those aren't your claims? They're alleged in the complaint, but they're not your claims? They provide some context here, but I don't think our claims are, the allegations concerning the FDCA are not critical to the claims. So, for example, we've offered to amend the complaint to delete any references to the FDCA at all. Okay. Did you file a proposed pleading which eliminated the FDA allegations? No, we have not. But you're willing to do that, is that right? Yes. If allowed leave to amend? If allowed leave to amend, we could delete any references to the FDCA. Well, let's go to the RICO claims now. If we determine that the district court properly dismissed the RICO claims, can that defect be cured by an amendment? What could your client allege to cure that defect? Well, our position is that there is not a defect. We've alleged that sales of the third party. All right, but if we say there was, okay, if we say that you didn't state a RICO claim, what more can, you know, how can you cure that? You can't just file the same thing if we say there's not a RICO claim. Right. Would it be on the same basis as the district court that there wasn't an alleged injury? You're talking about dismissal on the same basis as the district court being on the injury issue? All right, you allege a RICO claim, right? Yes. If that isn't sufficient, what else can you allege to make a sufficient RICO claim? I think we've alleged here that sales have been diverted. All right, so I guess are you saying you can't say anything more, so either you rise or fall on what you've already said on the RICO claim? That's our position on the RICO claim. There's nothing else that you could add to that? No. You couldn't add any factual material to your amended complaint, which shows the decrease in sales that you have suffered as a result of Iron Mag's sales? We could add more factual allegations on the, yes, on the decreased sales. Rather than the conclusion that you suffered some injury in an evanescent way, you could state a few facts, could you not? Right. Yes. Thank you. Okay, that's kind of important. Yes, thank you. You want to save the rest of your time for rebuttal? Or did you have something else that you want to say now? One more point I'd like to make if I still. So the United States Supreme Court has made clear here that private lawsuits under the Lanham Act, like the one at issue here, are critical to protecting against unfair competition and deception in the marketplace. And in the Palm Wonderful v. Coca-Cola decision, the Court recognized that the Lanham Act and the FDCA complement each other in regulating misleading labels, as each has its own scope and purpose. So by relying on the market expertise of competitors, the Lanham Act protects commercial interests against unfair competition, while the FDCA protects public health and safety. To the extent Lanham Act suits touch on the same subject matter as the FDCA, they provide synergies among multiple methods of regulation. And I'll reserve the rest for rebuttal. All right. Thank you.  Good morning. May it please the Court. Brian Bergeron on behalf of the Appelese Iron Mag Lab, LLC, Iron Mag Research, and Robert DiMaggio. I'd like to start by emphasizing that this is not the prototypical false advertising case between competitors. What it is is a case involving violations of the Food, Drug, and Cosmetic Act, as well as a case that requires determinations under the Food, Drug, and Cosmetic Act as to whether Osterine is a new drug, a prescription drug, or have been misbranded as a dietary supplement. The district court correctly applied the primary jurisdiction doctrine in this case. Well, let me ask you this, though. In its supplemental brief, Iron Mag argues that the recent warning letter from the FDA is not significant because it's not final agency determination. Why is agency action significant for purposes of the primary jurisdiction doctrine only if it constitutes a final determination? Can you point us to any cases supporting your views? Well, this boils down to, as a practical matter, what involves violations in this case of the FDCA. Because when you guys argued this, there wasn't that letter, right? That's correct. And then we found it, and we asked you to comment on it. Then you said, because it's not final, it doesn't matter. Well, it boils down to two reasons. First and foremost, the warning letter is informal in advisory under the FDA's manual as well as the Ninth Circuit's decision in biotics, dietary supplements, and in other cases. What that means is, while it may communicate the agency's position on a matter, it's not final. It may change. There's no enforcement action that needs to be taken. And so as a result of the lack of enforcement action, there's no legal consequence that flows from the letter. There's no rights or obligations that have been predetermined. And you can see that outside of the Ninth Circuit and the D.C. Circuit case of holistic candelayers where the FDA actually filed an amicus brief before or, excuse me, a response to the petition for cert before the Supreme Court on this very issue. The second reason is that as a practical matter, when you're dealing with violations of the FDCA and issues such as a misbranding or misclassification of an ingredient and whether something is a new drug, a prescription drug, those are issues that are firmly committed to the FDA. Suppose we take Ms. Zepeda at her word that she, if granted leave to amend, would eliminate the allegations that whether Osterox and DMZ-40 are misbranded as dietary supplements and whether they are prescription drugs or new drugs and simply take the rest of her allegations as to false marketing and safe and effective use and deceiving deception. That wouldn't involve any FDA determinations, would it? Well, it would, Your Honor, because context in this case is important. She's removing the context. She's saying we're not relying on FDA determinations. We're relying on other allegations of misleading conduct. Well, take, for example, Your Honor, the allegation that something is safe and effective. The way plaintiffs would prove that and the support for that in the complaint actually requires or necessitates a determination under the FDCA. Why? Well, can't they get expert wombat to get up on the stand and say they're not safe and effective? Well, Your Honor, it's important to look at what's actually alleged in the complaint  So if you look at the supplemental excerpt of record, I believe it's page 244, paragraph 29, this is what the allegation says. It says the FDA previously concluded that products like Osterine are prescription drugs and therefore present significant potential safety risks to consumers who take them without supervision. What plaintiffs are essentially arguing is that because a product is false, is advertising In this complaint? Yes. But don't you credit the good faith of Ms. Zepeda saying that on an amended complaint she would take the FDA stuff right out of there, wouldn't rely on it? Well, that's, Your Honor, that's not sufficient. But as a secondary reason, it's important to look at the complaint that was before the district court when the district court made this determination. And the district court could have granted leave to amend to excise those portions of the complaint which invoke FDA supervision. The appellant also, respectfully, Your Honor, could have asked for leave to amend on this very issue. Instead, what you have is appellant arguing that the primary jurisdiction doctrine does not apply. So what you're saying is they waive the right to amend? Yes, Your Honor. And if I can give you the precise citation where they actually waive this, and I believe it's evidentiary record, it's footnote 2 in their opposition brief. And what they actually say in that is to the extent that the primary jurisdiction doctrine applies, the dismissal should be without prejudice. Appellants did not argue that they could cure the issue. They did not present to the district court that they could have deleted allegations. None of this was before the district court. That alternative position is that there should be a stay in this proceeding until the FDA comes out with a final ruling. No, Your Honor. Again, similar reason. It's because appellants never raised that argument down below. Yeah, but that's what the primary, that's what the doctrine says. You either dismiss without prejudice or you stay it, right? That's correct, Your Honor. It's a binary choice. Okay, but so why isn't that, so why isn't the district court wrong then? In terms of not providing a stay as opposed? Correct. Well, two reasons, Your Honor. First and foremost is under the Syntec decision, the court observed that when the remedy contemplated is a referral to the agency to get an agency determination, just as what it is in this case, dismissal without prejudice is the proper remedy. The second reason is you have to look at the arguments before the district court on this issue. There was no allegation of unfair disadvantage or prejudice that would support an entry of the stay. In Ostiana, the reason why the district court was reversed is because the district court failed to consider those arguments. Not that those arguments were not made. It would not be an abuse of discretion for the district court to not consider arguments raised below, and that's from the Smith v. Marsh decision that this court decided in 1999. So similar to your argument that there's a waiver of the right to amend, you say there was no argument made as to a stay and there was a waiver as to that. That's correct, Your Honor. Okay. And so now if I may, I know the panel had questions about the RICO claim, and I think it's important to discuss, you know, to address something Ms. Cepeda said, which is — Counsel, before you get there, I'm still confused over how we get an amended complaint before the court. It's my understanding that the court denied the joint motion to file an amended complaint. That's correct, Your Honor. Okay. It was filed anyway. That's correct. And what's before the court? The first complaint or the amended complaint? And if it's the amended complaint, how did it get there? So, Your Honor, it's the first complaint. The first complaint didn't even have a RICO claim in it. Correct. And the court considered the RICO claim in the first amended complaint to determine whether it would have been futile for plaintiffs to even allege a RICO claim. And if you read the district court's order, you know, it suggests that that's what the district court did. And in excess of caution, it considered the first amended complaint and the allegations for the RICO cause of action and properly dismissed them because of the failure to provide or to allege proximate causation. But the RICO claim, as a matter of law, it's deficient. No amount of amendments, no amount of plaintiffs. Why is it insufficient to allege that your actions diverted sales to nutrition and caused them economic injury as a result of that? Why isn't that a sufficient allegation? Well, Your Honor, it doesn't meet the strict standard for proximate causation under Section 1962C. Under the Holmes decision, the Supreme Court imposed a strict proximate causation requirement. And since that decision, the general tendency has been to not go beyond the first step. And you see this in the HEMI decision as well. And what that means here, there's actually two separate defects that the appellants could not cure. The first is that plaintiff cannot allege that it was directly injured. Of course it did. It said we were ‑‑ our sales were diverted to you, to Iron Mag, right? Now, if I'm a salesman and my sales are diverted to someone else, doesn't that say that I've been injured? Well, Your Honor, under the Supreme Court's decision in Holmes, that is not enough. The mere fact ‑‑ What do I have to say? The sales were diverted on Monday, Tuesday and Wednesday in the amount of $100 and $200 and $300? That's correct, Your Honor. Because it goes to a more fundamental ‑‑ I have to allege evidentiary matter in a complaint? No, Your Honor. It goes to a more fundamental defect. It's about alleging who the target of the enterprise is. Here the target of the enterprise are consumers. Consumers are the ones that have been misled, not a competing supplement company because the nutrition distribution is not the target of the enterprise. Under the Brocade decision as well as the Holmes decision, which the Supreme Court discussed this very issue, it's plainly insufficient. Holmes said when a plaintiff complains of harm merely flowing from misfortunes to a third party, in this case the consumers ‑‑ The consumer is also being hurt because he's being sold deceptive goods. But the plaintiff here is failing to sell what they say are not deceptive goods. I mean, it's conceivable that two persons are hurt, correct? That's correct, Your Honor. However, this then goes to the second requirement of proximate causation, which is a measurement of the directness between the injury alleged ‑‑ Well, that's a matter for expert witness. He'll come up and say, yes, they had all these sales before you started selling Osterine, and now they have substantially fewer sales. And in my considered opinion, it was caused by the Osterine sales. And then you do that at summary judgment. Well, Your Honor, you can actually do this at the pleading stage because the remoteness of the injury between the lost sales and the misrepresentations are clear. In the ONSA decision, it's ONSA versus Ideal Steel Supply Corporation that the Supreme Court decided in 2006. It's highly instructive on that point. In that case, what you had was a defendant that was filing false tax returns with the State of New York. That then allowed it to lower its prices and capture market share. What the Supreme Court said was that was too many causal links. Well, that's more attenuated than the facts here, though. It's not directly on point. Correct, Your Honor. And when you're asking us to do it on the pleadings and not give a person at least a chance for leave to amend, that's pretty, you know, we would have to be able to say as a matter of law it would be futile. And, Your Honor, respectfully, it is futile. Well, that's your point. Okay. That's your ‑‑ we've gone over time. Unless any of my colleagues have additional questions, that will conclude your comments. Thank you. I would just like to address a few ‑‑ You need to speak into that. Speak loudly. If you'd like to be heard. Sorry. Is this better? I'm assuming you would if you're here. Yes. Thank you. Okay. I would just like to address a few points made by appellees. First of all, the defendants take contrary ‑‑ Why don't you address the futility point? Because initially you said you couldn't say anything else. Judge Bea threw you a lifeline and you jumped at it. And now you've heard why they cited a case that said you're really ‑‑ it's too speculative what you would allege. Why don't you address why you should be given leave to amend on the RICO claim? On the RICO claim. Sure. Well, here it's undisputed that the parties are both competitors, that they target the same consumers, and these allegations must be accepted as true and interpreted in the light most favorable to the plaintiff here. What defendants are arguing is a matter of ‑‑ You have to show some injury and you have to show some proximate cause. It can't just be a speculative injury. Right. And the injury here has been a diversion of sales. We can allege more facts on to which sales were diverted and how that's harmed nutrition distribution. What exact remedy would you have us craft? The remedy here would be restitutionary in terms of loss ‑‑ Now, what do you want this panel to do for you? On the order to reverse the order. Reverse and remand with instructions or plain reverse? More like a reversal. Plain and simple. Okay. You don't want to ask for leave to amend? Yes, we would like leave to amend. Any other questions? No, that concludes your time, then. Thank you. Thank you both for your argument. This matter will stand submitted.
judges: Kelly, Callahan, Bea